IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| South Carolina Coastal Conservation League, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | C.A. No.: 2:07-3802-PMD |
| | ) | **ORDER** |
| UNITED STATES ARMY CORPS OF ENGINEERS, Charleston District; LT. GENERAL ROBERT L. VAN ANTWERP, in his official capacity as Chief of Engineers, U.S. Army Corps of Engineers; LT. COLONEL TREY JORDAN, in his official capacity as District Engineer, U.S. Army Corps of Engineers, Charleston District; UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; STEPHEN L. JOHNSON, in his official capacity as Administrator of the U.S. Environmental Protection Agency; JAMES PALMER, in his official capacity of Regional Administrator, Region IV, U.S. Environmental Protection Agency; NATIONAL MARINE FISHERIES SERVICE; CARLOS M. GUTIERREZ, in his official capacity as Secretary of Commerce; ROY E. CRABTREE, in his official capacity as Regional Administrator of the National Marine Fisheries Service Southeast Region, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

This matter is before the court upon a Motion to Dismiss filed by the following Defendants: the United States Environmental Protection Agency; Stephen L. Johnson, in his official capacity as Administrator of the Environmental Protection Agency; and James Palmer, in his official capacity

as Regional Administrator of Region IV, Environmental Protection Agency.[1]  For the reasons set forth herein, the court grants in part and denies in part EPA's motion.

## **BACKGROUND**

This case involves Plaintiff South Carolina Coastal Conservation League's ("Plaintiff" or "SC Coastal") challenge to Permit Numbers 2003-IT-016-P-C and 2005-IN-440-P-C, issued by the United States Army Corps of Engineers (the "Corps") to the South Carolina State Ports Authority and the South Carolina Department of Transportation in connection with the construction of a marine container terminal and associated highway in Charleston, South Carolina.  Plaintiff filed an Amended Complaint in this action on March 31, 2008, asserting claims against the Corps, the EPA, the National Marine Fisheries Service, and various individuals of these organizations in their official capacities.  The Amended Complaint alleges the Defendants violated the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321 *et seq*. (Counts One through Five); the Clean Water Act ("CWA"), 33 U.S.C. §§ 1251 *et seq*. (Counts Six through Nine and Eleven); the Rivers and Harbors Act of 1899 ("RHA"), 33 U.S.C. §§ 401 *et seq*. (Count Ten); and the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531 *et seq*. (Counts Twelve and Thirteen).  Plaintiff also alleges Defendants violated the Administrative Procedures Act (the "APA"), 5 U.S.C. §§ 701-706, by acting arbitrarily or capriciously, or contrary to law.

Paragraph 1 of Plaintiff's Amended Complaint states, in part,

Instead of analyzing the Project[2] as a whole, as NEPA requires, the Corps

---

[1]The court will refer to these three Defendants collectively as "EPA."

[2]The "Project" refers to (1) a 300-acre marine cargo container terminal at the former Charleston Naval Base, (2) a new four-lane access road that will connect the terminal to I-26, and (3) two new additional lanes for I-26.  (*See* Am. Compl. ¶ 1.)

>piecemealed it into smaller segments and by doing so evaded the examination of alternatives to the Project overall–alternatives with less impact on human health, the environment, traffic congestion, and the public fisc. This piecemealing ensured that the Project's cumulative environmental impacts went undisclosed, thus allowing the selection of a predetermined outcome. The corps further violated NEPA by failing to adequately analyze even the component parts of the overall Project, obscuring the fact that pollution from the terminal and connecting highway will cause Charleston to exceed national maximum air standards for soot and will depress oxygen levels in the Cooper River to below state water quality standards . . .

(Am. Compl. ¶ 1.) Plaintiff further alleges the Corps and the EPA "violated the CWA by failing to consider and select a less damaging, practicable alternative to the Project." (*Id*. ¶ 2.) "Plaintiff [also] seeks relief from the conduct of the National Marine Fisheries Service," Defendants Guiterrez, Crabtree, and the "Corps that is arbitrary, capricious and otherwise contrary to the legal requirements of the ESA with respect to the endangered North Atlantic right whale . . . –one of the most endangered marine mammals in the world." (*Id*.) Plaintiff seeks, *inter alia*, (1) a declaratory judgment stating that the Defendants violated NEPA, the CWA, the RHA, the ESA, and the implementing regulations of these statutes; (2) an injunction requiring the Defendants to comply with the provisions of NEPA, the CWA, the RHA, the ESA, and the implementing regulations of these statutes; and (3) an order that the two permits (for the terminal and the access road) be vacated, set aside, or rescinded. (Am. Compl. at 49.) On June 2, 2008, Defendant EPA, Defendant Johnson, and Defendant Palmer filed a Motion to Dismiss all claims against them.[3]

## STANDARD OF REVIEW

---

[3]Although not clear, it appears these Defendants move for dismissal pursuant to both Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure.

When considering a Rule 12(b)(6) motion, a court must accept as true the facts alleged in the complaint and view them in a light most favorable to the plaintiff. *See Ostrzenski v. Seigel*, 177 F.3d 245, 251 (4th Cir. 1999).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (citations omitted).

When evaluating a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) on the grounds that the complaint fails to state facts upon which jurisdiction can be founded, "all the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir.1982). The plaintiff has the burden of proving jurisdiction, and the court may go beyond the face of the complaint and consider evidence without converting the motion into one for summary judgment. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir.1991).

## **ANALYSIS**

EPA argues the Motion to Dismiss should be granted for three reasons: (1) "the APA, which provides for a waiver of sovereign immunity against the United States, does not apply where the agency action is committed to agency discretion by law"; (2) Plaintiff's claims are not reviewable because the APA applies only to "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court"; and (3) there has been no agency action that is subject to review under the APA. (Mot. to Dismiss at 6-7.)

EPA first argues the Motion to Dismiss should be granted because its action "is not reviewable under the APA because it is 'committed to agency discretion by law.'" (*Id*. at 8.) EPA states,

> The only actions taken by EPA with respect to the Permits were providing comments to the Corps. . . . EPA did not initiate the process under Section 404(c)–a process that would have resulted in a determination whether to prohibit the specification of the disposal sites on the basis that an "unacceptable adverse effect" would be caused by the discharge of dredged or fill material at the disposal sites set forth in the Permit. Plaintiff has attempted to characterize the agency's inaction under Section 404(c) as a failure to "veto" the Permits.
> The APA does not apply to "agency action [that] is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). In Section 404(c), Congress committed to EPA the discretion to invoke a multi-step process to determine whether discharges of dredged or fill material at a specific disposal site would result in unacceptable adverse ecological impacts. 33 U.S.C. § 1344(c).

(*Id*.) In sum, EPA asserts that because its decision not to invoke the process set forth in Section 404(c) is committed to the agency's discretion by law, Plaintiff's challenge to that action is not reviewable under 5 U.S.C. § 701(a)(2). (*Id*. at 14.)

In Response, Plaintiff argues the Motion to Dismiss should be denied because "the League has stated jurisdictionally sound claims against EPA under two separate statutes, the Clean Water Act and the Administrative Procedure Act." (Resp. in Opp'n at 8-9.) Plaintiff states that while EPA seeks dismissal of all claims against it, EPA "offer[s] no argument repelling the League's CWA claims lodged against EPA." (*Id*. at 9.) Plaintiff further asserts there can be no doubt, "in the shadow" of *National Wildlife Federation v. Hanson*, 859 F.2d 313 (4th Cir. 1988), "that EPA's supervisory role in Section 404 permitting is non-discretionary, and thus that its actions are reviewable, in the alternative, under the Administrative Procedures Act." (*Id*.)

In Reply, EPA states, "Plaintiff's opposition brief is remarkable in that it argues that the Amended Complaint sets forth a claim under the citizen-suit provision of the Clean Water Act, even

5

though the claim is never specifically mentioned in the Amended Complaint." (Reply at 1.) EPA further asserts that because Plaintiff is "[f]orced to argue EPA's invocation of Section 404(c) authority is mandatory and not discretionary," Plaintiff improperly relies on a Fourth Circuit opinion that did not center on an APA claim. (*Id.*)

In assessing EPA's motion, the court must first determine whether Plaintiff properly pled its suit pursuant to the CWA. The jurisdiction section of the Amended Complaint states that the jurisdiction of this court is invoked pursuant to, *inter alia*, "33 U.S.C. § 1365(a) and (b) (CWA citizen suit provision)." (Am. Compl. ¶ 3.)[4] In addition, the sixth claim for relief alleges a violation of the CWA and APA for failure to consider less destructive alternatives pursuant to the CWA Section 404. (*See id.* at 38.) The seventh claim alleges a violation of the CWA and APA for failure to select less destructive alternatives pursuant to CWA Section 404. (*See id.* at 41.) The eighth and ninth claims allege violations of the CWA and APA for failure to include sufficient information to make a reasonable judgment pursuant to Section 404 of the CWA. (*See id.* at 42-44.) The eleventh claim alleges a violation of the CWA and APA for jeopardizing endangered or threatened species. (*See id.* at 46.) Within these causes of action, Plaintiff alleges "[t]he EPA has a statutory duty to

---

[4]Title 33, United States Code, Section 1365(a) states in part,
Except as provided in subsection (b) of this section and section 1319(g)(6) of this title, any citizen may commence a civil action on his own behalf–
    (1) against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation, or
    (2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator.

6

[e]nsure compliance with the 404(b) Guidelines. EPA violated that duty by not requiring the analysis of a full range of practicable and reasonable alternatives, and by not vetoing the permit under its Section 404(c) authority when the Corps failed to perform such an analysis." (Am. Compl. ¶ 128.) Plaintiff also alleges that "EPA violated its statutory duty to [e]nsure compliance with the 404(b) Guidelines by not vetoing the permit under its Section 404(c) authority when the Corps issued a permit that violated water quality standards." (*Id.* ¶ 141.)

EPA is essentially arguing that because the Amended Complaint alleges EPA violated its "statutory duty," as opposed to alleging EPA violated its "mandatory" or "non-discretionary" duty, EPA was not on notice that Plaintiff asserted a citizen-suit against it pursuant to the CWA. The court rejects this argument. The jurisdiction section of the Amended Complaint specifically indicates the suit pursuant to the CWA is in fact a citizen-suit, and there can be no doubt that Plaintiff has made allegations that various Defendants violated the CWA. With respect to the EPA specifically, Plaintiff alleges EPA violated its "statutory duty" by not vetoing the permit. Certainly the better course of action for Plaintiff would have been to specifically state EPA violated a mandatory or non-discretionary duty, as alleging a violation of CWA § 404(c) does not indicate whether Plaintiff alleges such a violation was of a discretionary or non-discretionary duty. *Cf. Sierra Club v. Train*, 557 F.2d 485, 488 (5th Cir. 1977) ("The substantive issue in this case is one of statutory construction, specifically whether § 1319(a)(3) imposes a discretionary or a non-discretionary duty on the EPA Administrator" and noting that if the duty was mandatory, the court had jurisdiction, but if the duty was discretionary, the dismissal should be affirmed). Plaintiff did allege, however, that EPA violated Section 404(c) of the CWA by, *inter alia*, failing to veto the permit. It thus appears to this court to be a question of law whether the duty imposed in Section

7

404(c) and which was allegedly violated is mandatory or discretionary. The court therefore concludes Plaintiff has alleged violations of both the CWA and the APA.

Section 404(c) of the Clean Water Act states,

> The Administrator is authorized to prohibit the specification (including the withdrawal of specification) of any defined area as a disposal site, and he is authorized to deny or restrict the use of any defined area for specification (including the withdrawal of specification) as a disposal site, whenever he determines, after notice and opportunity for public hearings, that the discharge of such materials into such area will have an unacceptable adverse effect on municipal water supplies, shellfish beds and fishery areas (including spawning and breeding areas), wildlife, or recreational areas. Before making such determination, the Administrator shall consult with the Secretary. The Administrator shall set forth in writing and make public his findings and his reasons for making any determination under this subsection.

33 U.S.C. § 1344(c). As noted above, EPA's first argument in support of its Motion to Dismiss is that "[b]ecause Section 404(c) confers discretion to EPA, this Court may not review EPA's exercise of that discretion not to initiate the process to prohibit the specification of the disposal sites set forth in the Permits." (Mot. to Dismiss at 7.) There is support for EPA's position in *Preserve Endangered Areas of Cobb's History, Inc. v. United States Army Corps of Engineers*, 87 F.3d 1242 (11th Cir. 1996). In *Cobb's History*, the Corps issued a permit under Section 404(a) of the CWA allowing Cobb County to impact approximately three and a half acres of wetlands. *Cobb's History*, 87 F.3d at 1245. The plaintiffs then filed suit against the Corps and the EPA, alleging the defendants violated the CWA, the NEPA, the ESA, and the National Historic Preservation Act. *Id*. The district court granted the defendants' motion to dismiss the claims brought under the citizen-suit provisions of the CWA, concluding that neither the EPA nor the Corps were subject to suit. *Id*.

One of the issues on appeal was whether the district court erred in dismissing the claims brought under the citizen-suit provision of the CWA. *Id*. at 1249. The Eleventh Circuit stated,

8

> The Clean Water Act does allow suits against the Administrator of the EPA where there is alleged a "failure of the Administrator to perform any act or duty under this chapter which is not discretionary . . ." However, the decision of the Administrator not to overrule the decision of the Army Corps is discretionary. The Administrator is "authorized to prohibit" and "authorized to deny or restrict the use of any defined area for specification." 33 U.S.C. § 1344(c). Thus the Administrator has the authority to overrule the Corps. The EPA views this authority as discretionary. In the regulations adopted pursuant to the statute, the Regional Administrator "may" initiate certain actions if he believes that an "unacceptable adverse effect" could result. 40 C.F.R. § 231.3(a). We agree with the EPA that this power is discretionary. By statute, the Administrator is authorized rather than mandated to overrule the Corps. 33 U.S.C. § 1344(c). Because this power is discretionary, the citizen suit provision of the Clean Water Act does not apply.

*Id.*; *see also Alliance to Save the Mattaponi v. U.S. Army Corps of Eng'rs*, 515 F. Supp. 2d 1, 4-5 (D.D.C. 2007) (concluding the EPA could not be sued under Section 404(c) of the CWA for failing to veto issuance of a permit because that statute grants the EPA the discretionary power to veto a permit); *City of Olmstead Falls v. U.S. Envtl. Prot. Agency*, 266 F. Supp. 2d 718, 722-23 (N.D. Ohio 2003) (determining the court lacked jurisdiction to review the EPA's decision not to veto the Corps' decision to issue a Section 404 permit because the EPA's "veto power as set forth in Section 404(c) is discretionary").

An opinion from the Fourth Circuit, however, casts doubt upon the viability of the reasoning of these opinions and orders in the Fourth Circuit. *See Nat'l Wildlife Fed'n v. Hanson*, 859 F.2d 313 (4th Cir. 1988). In that case, the EPA and the Corps appealed from a district court order awarding attorney's fees to the National Wildlife Federation ("NWF") and several other groups who challenged the Corps' determination that two tracts of land were not wetlands under Section 404 of the CWA. *Id.* at 314-15. NWF also "complained about the EPA's failure to exercise its authority with respect to wetlands." *Id.* at 315. On appeal, the government argued NWF's suit "did not qualify as a citizen suit under section 1365(a)(2) because the NWF challenged the Corps' exercise

9

of discretion with respect to wetlands and not the EPA administrator's failure to carry out a mandatory duty." *Id*. The Fourth Circuit stated,

> Sections 404 and 505(a) of the Clean Water Act, 33 U.S.C. §§ 1344 and 1365(a) must be read together. Section 1344 authorizes the Secretary of the Army acting through the Army Corps of Engineers to regulate the discharge of dredged or fill material into United States waters, including wetlands. The Corps' permit decisions must be based on EPA guidelines. Section 1344(c) authorizes the Administrator of the EPA to block or override a Corps' permit decision. Section 1365(a)(2) authorizes any citizen to commence a civil action "against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator."
> 
> It is quite clear that both the Corps and the EPA are responsible for the issuance of permits under the CWA and enforcement of their terms. The Corps has the nondiscretionary duty to regulate dredged or fill material, and to fulfill that duty it must make reasoned wetlands determinations. *See United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 138-39, . . . (1985). The Corps has a mandatory duty to ascertain the relevant facts, correctly construe the applicable statutes and regulations, and properly apply the law to the facts. The EPA is ultimately responsible for the protection of wetlands. *See Avoyelles Sportsmen's League, Inc. v. Marsh*, 715 F.2d 897 (5th Cir. 1983) (reviewing EPA and Corps wetlands determination to ensure that the agencies correctly ascertained the extent of the wetlands on the site in question).
> 
> Congress cannot have intended to allow citizens to challenge erroneous wetlands determinations when the EPA administrator makes them but to prohibit such challenges when the Corps makes the determination and the EPA fails to exert its authority over the Corps' determination.[5] Section 1365(a)(2) should be interpreted in conjunction with Civil Procedure Rule 20 (joinder) to allow citizens to sue the Administrator and join the Corps when the Corps abdicates its responsibility to make reasoned wetlands determinations and the Administrator fails to exercise the duty of oversight imposed by section 1344(c).

*Id*. at 315-16.[6]

---

[5]In *Cobb's History*, the Eleventh Circuit disagreed with the Fourth Circuit's determination that a suit against the Corps was viable under 33 U.S.C. § 1365(a)(2). *See Cobb's History*, 87 F.3d at 1249 n.5. The Eleventh Circuit concluded that because § 1365(a)(2) does not refer to the Corps, "Congress did not intend to waive sovereign immunity in regard to suits" against the Corps under the CWA. *Id*.

[6]The government also argued in that case that NWF was not entitled to attorneys' fees under the CWA because the court reviewed the Corps' wetlands determination under the APA,

The United States District Court for the Eastern District of North Carolina applied *Hanson* in *Environmental Defense Fund v. Tidwell*, 837 F. Supp. 1344 (E.D.N.C. 1992). The plaintiffs therein brought suit against the Corps and the EPA pursuant to the APA and the citizen-suit provision of the CWA. *Tidwell*, 837 F. Supp. at 1347. These two defendants sought dismissal of the CWA claim, arguing the plaintiffs could not bring suit against them under the CWA for refusal to require an entity to obtain a permit for its silvicultural activities. *Id*. at 1354. Because Section 1365(a)(2) only allows a suit against an Administrator for failure to perform a non-discretionary act or duty, "the issue presented . . . [was] whether federal defendants' determination that [the entity] does not need a permit under section 1344 is a non-discretionary act or merely the exercise of prosecutorial discretion." *Id*. The court stated,

> The Fourth Circuit's decision in *Hanson* . . . is instructive on this issue. In *Hanson*, the Fourth Circuit determined that the Corps' responsibility to regulate dredged or fill material pursuant to section 1344 is a non-discretionary duty. Furthermore, the *Hanson* court held that the EPA's ultimate responsibility for the protection of wetlands under the CWA was also a non-discretionary duty. *Hanson*, 859 F.2d at 315-16. Therefore, the court held that both federal defendants' actions ruling that certain lands did not constitute wetlands were non-discretionary duties. *Id*.

*Id*. The court noted that "although the allocation of authority" was slightly different than that in *Hanson*, the court determined the difference was not dispositive and stated, "[U]nder the ruling in

---

and act that does not provide for attorneys' fees. *Hanson*, 859 F.2d at 316. The Fourth Circuit rejected that argument, stating,
> The CWA does not establish the standards for reviewing either the EPA's or the Corps' wetlands determinations. The appropriate standards are set forth in the Administrative Procedure Act, which provides that a court "shall set aside agency findings, conclusions and actions that are arbitrary, capricious or an abuse of discretion." *See Avoyelles*, 715 F.2d at 904. The district court's review of the Corps' wetlands determination under APA standards was proper and did not alter the jurisdictional base of the court's judgment.

*Id*. (some citations omitted).

11

*Hanson*, the EPA has a non-discretionary duty to regulate dredged or fill material under section 1344. . . . Thus, under the Fourth Circuit's expansive interpretation of non-discretionary duty in *Hanson*, both federal defendants' actions regarding [the entity's] silvicultural activities constitute a non-discretionary act for the purposes of section 1365(a)(2)." *Id*. at 1364-65.

The United States District Court for the Eastern District of North Carolina then addressed the plaintiffs' claim that the federal defendants violated the APA because they failed to require a permit under Section 1344 of the of the CWA. *Id*. at 1365. The district court concluded plaintiffs could not proceed on their APA claims because plaintiffs "have an adequate remedy under the citizen suit of the CWA." *Id*. at 1357. The plaintiffs argued such a position is inconsistent with *Hanson*, but the district court rejected this argument. *Id*. at 1356-57. Although the plaintiffs asserted the *Hanson* plaintiffs were allowed to sue under both the APA and the citizen-suit provision of the CWA, the court stated,

> [A]s the district court opinion [in *Hanson*] makes clear, plaintiffs brought suit only under the citizen suit provision of the CWA. *National Wildlife Federation v. Hanson*, 623 F. Supp. 1539, 1540 (E.D.N.C. 1985). Although the APA did furnish the standard of review for the EPA's and the Corps' actions under the CWA in *Hanson*, plaintiffs did not file a separate cause of action under the APA. *See Hanson*, 859 F.2d at 316. Therefore, the Fourth Circuit's decision in *Hanson* is not contrary to the holdings of the Third and Ninth Circuits.

*Id*.; *see also Or. Natural Res. Council v. U.S. Forest Serv.*, 834 F.2d 842, 851 (9th Cir. 1987) (holding that the citizen suit provision of the CWA establishes a separate and adequate procedure for review of federal defendants actions if the plaintiff can bring suit under that provision); *Allegheny County Sanitary Auth. v. U.S. Envtl. Prot. Agency*, 732 F.2d 1167, 1177 (3d Cir. 1984) (same).

In its Reply, EPA argues that "[a]ssuming Hanson was correctly decided, that case does not

cover the situation here, where the Corps issued a Section 404(a) permit and EPA did not exercise its discretionary authority to prohibit the specification of disposal sites upon that issuance." (Reply at 5-6.) According to EPA, "Plaintiff's interpretation of Hanson would expand the reach of that case far beyond the holding of the Fourth Circuit, to stand for the sweeping proposition that EPA is subject to a Clean Water Act citizen suit every time the Corps grants a Section 404 permit authorizing discharges of dredged or fill material into the waters of the United States." (*Id*. at 6.) EPA asserts "[n]othing in the Hanson opinion suggests such a result . . ." (*Id*.) In attempting to distinguish *Hanson*, EPA notes that *Hanson* was decided in a very different context–an appeal of a district court's award of attorneys' fees–than the case *sub judice*. (*Id*.) EPA states, "It was in this context that the Fourth Circuit analyzed whether the plaintiffs could maintain a Clean Water Act Section 505(a)(2) mandatory duty claim based on EPA's 'failure to veto' under Section 404(c)." (*Id*.) EPA states, "The Fourth Circuit offered very little explanation for its conclusion that such a mandatory duty could be maintained; however, a close reading of the opinion shows that the outcome was greatly influenced by the fact that the case involved a challenge to a determination by the Corps that certain property did not constitute 'wetlands' and thus was outside the jurisdiction of the Clean Water Act." (*Id*. at 6-7.) EPA argues that *Hanson* is limited to issues involving CWA jurisdiction and that noting this distinction is important because "the Hanson court had no occasion to, and did not purport to, analyze whether Clean Water Act Section 404(c) imposes a mandatory duty with respect to permitting actions." (*Id*. at 7.)

While EPA is correct that *Hanson* was decided in the context of an appeal of an award of attorney's fees, and the action challenged was a determination that a particular tract of land was not wetlands, this court cannot ignore what the Fourth Circuit stated:

13

> Section 1365(a)(2) should be interpreted in conjunction with Civil Procedure Rule 20 (joinder) to allow citizens to sue the Administrator and join the Corps when the Corps abdicates its responsibility to make reasoned wetlands determinations *and the Administrator fails to exercise the duty of oversight imposed by Section 1344(c).*

*Hanson*, 859 F.2d at 316 (emphasis added). The Fourth Circuit has thus plainly stated that a plaintiff may maintain a citizen suit under Section 1365(a)(2) when the "Administrator fails to exercise the duty of oversight imposed by Section 1344(c)." *Id.* Given this failure is exactly what Plaintiff has alleged, the court concludes that *Hanson* allows this suit to proceed under the citizen suit provision of the CWA. *See id.*; *see also Tidwell*, 837 F. Supp. at 1354 ("[U]nder the ruling in *Hanson*, the EPA has a non-discretionary duty to regulate dredged or fill material under section 1344.").[7]

Although the court concludes EPA's Motion to Dismiss must be denied with respect to the claims under the CWA, the court grants EPA's motion with respect to claims under the APA. EPA states in its Reply, "If the Court were to find that Plaintiff has asserted a valid Clean Water Act citizen-suit claim, it should dismiss the APA claims. The APA applies only to agency action 'for which there is no other adequate remedy in a court.'" (Reply at 10 (citing 5 U.S.C. § 704).) The court agrees with EPA–if, as this court has determined, Plaintiff's citizen suit under the CWA may proceed, Plaintiff's APA claim against EPA is subject to dismissal. *See Tidwell*, 837 F. Supp. at 1356 (agreeing with the rule from the Third and Ninth Circuits that "if a plaintiff can bring suit against the responsible federal agencies under the CWA, this action precludes an additional suit

---

[7]In EPA's Motion to Dismiss, EPA states,

> Even if the Court were to find that EPA has a nondiscretionary duty to initiate Section 404(c) proceedings, the APA claim should be dismissed. This is because Plaintiff's only potential for relief would be under the citizen-suit provision of the Clean Water Act, 33 U.S.C. § 1365. Plaintiff has not alleged such a claim in this case.

(Mot. to Dismiss at 13 n.6.) However, as noted above, the court concludes Plaintiff *has* alleged a citizen suit pursuant to the CWA.

under the APA. However, where a plaintiff's claims are not covered by the citizen suit provision of the CWA, the plaintiff can maintain an action against the responsible federal agencies under the APA."); *see also Hayes v. Whitman*, 264 F.3d 1017, 1025 (10th Cir. 2001) ("Because review of Plaintiffs' claim *is* available under the Clean Water Act, it is not subject to review under the APA."); *Kingman Park Civic Ass'n v. U.S. Envtl. Prot. Agency*, 84 F. Supp. 2d 1, 9 (D.D.C. 1999) ("Plaintiffs' Count V, which articulates several claims under Section 10(e) of the . . . [APA], must be dismissed because they are duplicative of the claims that have been validly asserted in Count IV under the citizen-suit provision of the CWA."); *cf. Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988) ("When Congress enacted the APA to provide a general authorization for review of agency action in the district courts, it did not intend that general grant of jurisdiction to duplicate the previously established special statutory procedures relating to specific agencies.").[8]

## **CONCLUSION**

It is therefore **ORDERED**, for the foregoing reasons, that the Motion to Dismiss filed by Defendant United States Environmental Protection Agency, Defendant Johnson, and Defendant

---

[8]The parties make several additional arguments concerning whether this court should dismiss Plaintiff's claims pursuant to the APA. For example, EPA asserts this court should dismiss the APA claims against it because its action does not constitute final agency action. (*See* Mot. to Dismiss at 15.) However, because the court has determined that Plaintiff states a claim pursuant to the citizen suit provision of the CWA, and that dismissal of the APA claims is therefore appropriate, the court does not address the remainder of the arguments about the viability of Plaintiff's APA claims.

Palmer is **GRANTED IN PART** and **DENIED IN PART**. Specifically, the Motion to Dismiss is denied with respect to Plaintiff's claims pursuant to the Clean Water Act. The Motion to Dismiss is granted with respect to Plaintiff's claims pursuant to the Administrative Procedures Act.

  **AND IT IS SO ORDERED**.

                   PATRICK MICHAEL DUFFY
                   United States District Judge

**September 11, 2008**
**Charleston, South Carolina**